# In the United States Court of Federal Claims

No. 14-1062
Filed: May 11, 2017

*******************************************

| | |
|---|---|
| ANDREW RUSSELL and RUTH GALLEGO, et al., | * <br> * <br> * <br> * <br> * |
| Plaintiffs, | * <br> * |
| v. | * <br> * |
| THE UNITED STATES, | * <br> * |
| Defendant. | * <br> * <br> * |

Rule of the United States Court of Federal Claims ("RCFC") 23(e) (Settlement, Voluntary Dismissal, or Compromise).

*******************************************

**John G. Jacobs,** Jacobs Kolton, Chtd., Chicago, Illinois, Counsel for Plaintiffs.

**Michael Anthony Rodriguez**, United States Department of Justice, Washington, D.C., Counsel for the Government.

### FINAL MEMORANDUM OPINION AND ORDER AUTHORIZING PAYMENT OF SHIFT DIFFERENTIAL AND LUMP SUM PAY DUE TO CERTAIN ARMY AND AIR FORCE EXCHANGE SERVICE EMPLOYEES

**BRADEN**, *Chief Judge*.

On May 10, 2017, the court convened a hearing, pursuant to Rule 23(e) of the Rules of the United States Court of Federal Claims ("RCFC"), on Plaintiffs' Consent Motion for Final Approval of Class Action Settlement Agreement, (Docket Number "Dkt. No." 21). The court has reviewed the motion and supporting papers, including a Settlement Agreement dated as of November 20, 2016 (*See* Dkt. No. 18-3) which, together with the Exhibit attached thereto, sets forth the terms and conditions for the proposed settlement of this matter (the "Settlement Agreement"), pursuant to which Plaintiffs offered to settle this case in exchange for payment by the Government in the amount of $4,000,000, inclusive of all damages, attorneys' fees, and expenses. Based upon this review, arguments of counsel and the findings below, the court being fully advised in the premises, the court finds good cause to grant the motion, and thus it is hereby ordered as follows:

1. The court has jurisdiction over the subject matter of this Action, the Parties, and all Settlement Class Members and all Persons who obtain releases as a result of this settlement.

2.      As confirmed by the declarations filed with the court by RSM US LLP ("RSM"), the court-appointed Settlement Administrator, and the Parties, the Notice Plan was implemented as directed by the Preliminary Approval Order and Settlement Agreement: (a) RSM sent direct notice of the settlement via First Class U.S. Mail to the last known postal addresses of all persons within the Settlement Class, as provided by AAFES from its records and updated by the National Change Of Address database; (b) RSM sent direct notice of the settlement to the email addresses of all persons within the Settlement Class for whom AAFES had email addresses; (c) Internet notice was given through a settlement website, www.AafesShiftDifferentialSettlement.com, established and maintained by RSM and supported by Google AdWords, which website contained a copy of the settlement notice and allowed for online claims filing; (d) AAFES put a link on its website, www.shopmyexchange.com, linking its visitors to the official settlement website; and (e) at all AAFES facilities, AAFES caused a poster-size settlement notice, no smaller than 24 inches by 24 inches, to be posted prominently and conspicuously near any time clock where AAFES employees regularly punch in and out for their shift (or, in the event that there was no time clock where employees punch in and out, in a place where employees were most likely to see it).

3.      The notice of the settlement pursuant to the Preliminary Approval Order and the Settlement Agreement was the best notice practicable under the circumstances and constituted due, sufficient and reasonable notice to the Class and complied fully with the requirements of RCFC 23 and of Due Process. The Notice apprised the class of the items required by RCFC 23(c)(2)(B), the key terms of the Settlement, Class Counsel's request for attorneys' fees and expenses and Class Representative incentive award, and Class Members' right to object to the Settlement, to Class Counsel's request for payment of attorneys' fees and/or to the request for a Class Representative incentive award.  The deadline for objections has passed and no class members have objected to the Settlement or the request for payment of attorneys' fees or the request for a Class Representative incentive award.

4.      Under RCFC 23(e), a class action may be settled only with the court's approval.  RCFC 23(e).  The court may approve the settlement only after finding that the proposed settlement is fair, reasonable, and adequate.  RCFC 23(e)(2).  In general, "[s]ettlement is always favored," especially in class actions where the avoidance of formal litigation can save valuable time and resources. *Sabo v. United States*, 102 Fed. Cl. 619, 626 (2011).  "Settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination."  *Sabo*, 102 Fed. Cl. at 626.  A court has discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement, nor may it decide the merits of the case or resolve unsettled legal questions.  *Adams v. United States*, 107 Fed. Cl. 74, 75–76 (2012)

The court previously found, subject to a final determination, that the Settlement was fair, adequate, and reasonable.  (*See* Dkt. No. 20).  The court hereby gives final approval to the Settlement Agreement and finds that the Settlement Agreement is, in all respects, fair, reasonable, adequate and in the best interests of the Class pursuant to RCFC 23(e) and hereby directs that it shall be effectuated in accordance with its terms.  The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth, and shall have the full force of an Order of the court.  The court finds that the settlement is the product of good faith negotiations at arm's length, and is not the product of fraud or collusion.

Specifically, the court finds that final approval of the Settlement is warranted in light of the following additional factors, *i.e.*: (1) the relative strengths of Plaintiffs' case in comparison to the proposed settlement; (2) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsels' representation of the class; (3) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the provision for attorney fees; and (6) the ability of the defendant to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity. *See Sabo*, 102 Fed. Cl. at 627; *see also Dauphin Island Property Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102–03 (2009).

In considering these factors, the court has found that: (1) the Settlement will result in a payment to the qualified claimants of up to 100% of the unpaid shift differential and lump sum leave payments that they were calculated to have been underpaid between November 1, 2008 and April 22, 2016; (2) the Settlement was reached after arm's length negotiations; (3) no Class Members objected to the Settlement, after receiving notification of its terms; (4) payments to the Class Members will be calculated uniformly and proportionally distributed, by the Settlement Administrator; (5) the contingency fee arrangement that Class Counsel disclosed to the Class Members, and to which no Class Member objected, *i.e.*, 38 percent of the Settlement Fund, is a typical arrangement; and (6) the ability of the Government to withstand a greater judgment neither favors nor disfavors approval of the Settlement.

5.      The court approves Class Counsel's request, pursuant to RCFC 23(h) and 54(d)(2) for an award of reasonable attorneys' fees and expenses.  Payment of attorneys' fees and expenses is authorized by law and by the parties' agreement.  The Settlement Agreement provides that attorneys' fees and expenses shall be paid out of the common settlement fund and such payments are authorized by law "on the equitable notion that lawyers are entitled to reasonable compensation for their professional services from those who accept the fruits of their labors." *Moore v. United States*, 63 Fed. Cl. 781, 786 (2005).  The Settlement Notice advised the Class that Counsel would ask the court to award Class Counsel attorneys' fees equal to 38 percent of the Settlement Fund to compensate them for their efforts in investigating the facts, litigating the case, negotiating the settlement, and implementing the settlement on behalf of the Settlement Class and for their risk in undertaking this representation on a purely contingent basis and advised them of their right to object to this request for attorneys' fees and expenses.  No Class Members have objected to the requested attorneys' fees or expense reimbursement.  Defendant agreed that it would not object to Class Counsel's application for reasonable attorney fees and for reimbursement of expenses to be paid from the common settlement fund, on the condition that the requested fees and expenses do not exceed 40 percent of the fund.

The court finds and determines that the payment to Class Counsel in the amount of $1,500,000 in attorneys' fees is fair and reasonable.  It represents 37.5% percent of the common settlement fund, slightly less than the 38 percent the Class was told Counsel would seek for attorneys' fees (and to which none objected).  Specifically, the court finds that the reasonableness of the fees is supported by the following factors: (a) the quality of counsel; (b) the complexity and duration of the litigation; (c) the risk of nonrecovery; (d) the fee that likely would have been negotiated between private parties in similar cases; (e) lack of any class member objections to the

fees requested by class counsel; (f) the percentage applied in other class actions; and (g) the size of the award. *See, e.g., Moore*, 63 Fed. Cl. at 786 (recognizing that "40% is within the acceptable range" with 50% being the upper limit and approving payment of attorneys' fee of $1.6 million in class action settlement, representing 34% of the gross recovery of approximately $4.7 million, not including expenses, and approving Class Counsel's request for reimbursement of expenses in the amount of $356,745, resulting in the total payment of attorney's fees and expenses of $1,956,745 out of a total gross settlement recovery of $5,065,820, representing roughly 38.6% of the total recovery); *Voth Oil Co., Inc. v. United States*, 108 Fed. Cl. 98, 105 (2012) (finding a 40% contingent fee reasonable). The court hereby gives final approval to and orders that payment of such amount be made to Class Counsel out of the Settlement Fund in accordance with the terms of the Settlement Agreement.

6.      The court approves Class Counsel's request for reimbursement from the Settlement Fund of reasonable expenses incurred by Class Counsel in connection with the litigation. Class Counsel have expended $16,603.01 in reimbursable expenses, including filing fees, travel expenses, service and courier fees, phone and fax charges, PACER charges, copying costs and fees of Plaintiffs' expert consultant. The court finds and determines that the payment to Class Counsel in the amount of $16,603.01 in expense reimbursement is fair and reasonable. The court hereby gives final approval to and orders that payment of such amount be made to Class Counsel out of the Settlement Fund in accordance with the terms of the Settlement Agreement.

7.      The court approves Class Counsel's request for the payment of Class Representative incentive awards to the named Plaintiffs. The court finds and determines that an award of $5,000 each to Plaintiffs Andrew Russell and Ruth Gallego for their services as the Class Representatives, in addition to any amounts that may be paid to them as Class Members, is fair and reasonable. The court hereby gives final approval to and orders that payment of such amounts be made to Mr. Russell and Ms. Gallego out of the Settlement Fund in accordance with the terms of the Settlement Agreement. Such payment is appropriate compensation for their time and effort and risks incurred in serving as the Class Representatives in this litigation and achieving the benefits for the class (none of whom has objected to such an award).

8.      The court approves the payment of notice and administration costs of the Settlement Administrator. The court hereby finds and determines that payment to RSM in an amount not to exceed $250,000 for costs of notice and settlement administration is fair and reasonable and gives final approval to and orders that payment of RSM's final bill, not to exceed $200,000 ($50,000 having already been paid to defray initial costs), be made to RSM out of the Settlement Fund in accordance with the terms of the Settlement Agreement.

9.      The Settlement Agreement constitutes a full and complete release of all shift differential and lump sum claims arising out of or relating to the claims brought in this lawsuit, or that could have been brought, against the United States, or any other agencies or instrumentalities of the United States, including AAFES, or any agents, employees, or officers thereof, by Settlement Class Members. Each Settlement Class Member employed or formerly employed by AAFES, releases, waives and abandons any and all claims, causes of actions, and demands arising out of or relating the shift differential and lump sum claims brought in this lawsuit, whether known or unknown, whether arising in law or in equity, jointly or several, which they, their heirs, executors,

administrators or assignees may have or hereafter acquire against the Defendant or any of its agencies, departments, officers, agents or employees, including but not limited to any claims for costs, expenses, attorney fees, and damages of any sort.

10.      Without affecting the finality of this Final Approval Order, the court retains exclusive and continuing jurisdiction as to all matters relating to the implementation, administration, consummation, enforcement and interpretation of the Settlement and/or the Settlement Agreement, including the Releases contained therein, and any other matters related or ancillary to the foregoing; and over all Parties hereto, including Settlement Class Members and any person who is released, for the purpose of enforcing and administering the Settlement Agreement and the Action until each and every act agreed to be performed by the Parties has been performed pursuant to the Settlement Agreement.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANDREW RUSSELL                                    )
AND RUTH GALLEGO,                                 )
individually and on behalf of all others          )
similarly situated,                               )
     Plaintiffs,         )  No. 14-1062
   v.                              )  Judge Susan G. Braden
                                                  )
THE UNITED STATES,                                )
                                                  )
     Defendant.          )

## <u>SETTLEMENT AGREEMENT</u>

For the purpose of settling this action without any further judicial proceedings, and without there being any trial or adjudication of any issue of fact or law regarding this action, and without constituting an admission of liability upon the part of either party, the parties hereby stipulate as follows:

1.  This case arises out of the claims of plaintiffs Andrew Russell and Ruth Gallego who allege that, while employed by the Army and Air Force Exchange Service (AAFES), they were entitled to receive premium pay for working night shift hours but were denied these benefits by AAFES.  Specifically, plaintiffs allege that they worked regularly-scheduled non-overtime shifts where the majority of the shift hours were between 3:00 p.m. and midnight (second shift) or between 11:00 p.m. and 8:00 a.m. (third shift), and that they were therefore entitled to premium pay, also known as shift differential pay.  Plaintiffs assert that because of an error in the payroll system used by AAFES, employees often failed to receive 7.5 percent additional premium pay for working the second shift and 10 percent additional premium pay for working the third shift.  Additionally, plaintiffs allege that payments to employees upon

separation from AAFES for accrued leave, or lump sum payments, were not accurately paid to employees as a result of the alleged failure to accurately pay the shift differential.

2.      Plaintiffs filed a complaint in this Court in which they sought to represent other present and former AAFES employees who were similarly situated, pursuant to Rule 23 of the Rules of the United States Court of Federal Claims.

3.      Following suit and an initial motion to dismiss, the parties entered into negotiations designed to resolve amicably plaintiffs' claims and the claims of potential class members.  The parties have engaged in extensive review of information and arms' length negotiations, and plaintiffs have offered to settle the case in exchange for payment by AAFES in the amount of $4,000,000, inclusive of all damages, attorney fees, and expenses (the Settlement Amount).  The parties have further agreed to settle the case on the following terms, subject to the approval by the Court:

a.      Plaintiffs will file a consent motion seeking certification of a settlement class (the Settlement Class).  The Settlement Class will consist of employees who worked for AAFES at any time between November 1, 2008 and April 22, 2016 (the Class Period) and who were eligible for night shift differential pursuant to 5 U.S.C. § 5343(f), 5 C.F.R. § 532.505 *et seq.* or various similar regulations promulgated by the Department of Defense (DoD) and AAFES, and who: (i) worked or were scheduled to work non-overtime shifts where the majority of such shift hours occurred either between the hours of 3:00 p.m. and midnight or between 11:00 p.m. and 8:00 a.m. and who were not paid the shift differential to which they were entitled; or (ii) were eligible for accumulated and current accrued annual or vacation leave payments upon separation pursuant to 5 U.S.C. § 5551, 5 C.F.R. § 550 *et seq.* or various related regulations promulgated by the DoD and AAFES, who separated from AAFES, and who, upon separation,

were not paid the full amount of lump-sum payments to which they were entitled.  Certification

of the Settlement Class shall be effected by entry of a preliminary approval order entered by the

Court.  If for any reason the settlement should not receive the final approval of the Court, or the

Court's approval of the settlement be overturned on appeal, then such certification shall become

null and void, and no party shall be affected in any way by such prior certification.

      b.      The parties have agreed that employees whose damages are less than $10

shall be excluded from the Settlement Class.  Those employees with damages of $10 or greater

who choose to opt in to the settlement are the Settlement Class Members.

      c.      Plaintiffs will, subject to the approval of the Court and defendant, select a

qualified Settlement Administrator.  The Settlement Administrator's responsibilities include: (1)

providing notice to the Settlement Class; (2) accepting and processing claims; (3) paying

Settlement Class Members' approved claims; (4) making appropriate withholding from

claimants' settlement distributions and remitting amounts withheld or payable to appropriate

taxing authorities; and (5) providing the parties a final accounting of all payments made.

      d.      The Settlement Administrator will establish a Qualified Settlement Trust

pursuant to section 468B of the Internal Revenue Code to disburse the proceeds of the

settlement.  The administration and maintenance of the Qualified Settlement Trust will be the

sole responsibility of the Settlement Administrator.  Pursuant to and as specified in this executed

agreement, AAFES will provide the Settlement Administrator with the Settlement Amount to be

deposited into the Qualified Settlement Trust.  The parties agree that, unless otherwise specified

herein, the United States' obligations and duties to plaintiffs and to the Settlement Class under

this agreement will be fully satisfied upon AAFES's payment of the Settlement Amount to the

Qualified Settlement Trust.  The United States makes no warranties, representations, or

guarantees concerning any disbursements the Qualified Settlement Trust makes, or fails to make, to any potential claimants.

       e.     All attorney fees and expenses of plaintiffs' counsel, incentive payments to the representative plaintiffs, charges of the Settlement Administrator, and costs of providing notice and processing claims will be paid from the Qualified Settlement Trust, and the remaining amount will be the Net Settlement Fund.  All approved claims to Settlement Class Members will be paid from the Net Settlement Fund.  The Settlement Administrator is solely responsible for payment of any applicable taxes, including all Federal, state, and local taxes, owed as a result of the disbursement of the settlement proceeds.

       f.     Settlement Class Members will be allowed to opt in to the class and file claims with the Settlement Administrator during a 120-day filing period.

       g.     If there are sufficient funds in the Net Settlement Fund, Settlement Class Members will be paid 100 percent of their calculated underpayments for shift differential and lump sum amounts.  Should the Net Settlement Fund be incapable of paying 100 percent of all approved claims, the approved claims shall be paid on a *pro rata* basis.

       h.     After paying all approved claims and all items listed in paragraph 3(e), any amount that remains in the Qualified Settlement Trust shall be returned to AAFES.

       i.     All Settlement Class Members will provide a full and complete release of all shift differential and lump sum claims arising out of or related to the claims brought in this lawsuit, or that could have been brought, against the United States, or any other agencies or instrumentalities of the United States, including AAFES, or any agents, employees, or officers thereof, by Settlement Class Members.

4.     The offer referenced in paragraph 3 has been accepted on behalf of the Attorney General.

5.     As soon as practicable after the execution of this agreement, plaintiffs shall file a consent motion, seeking entry of an order of preliminary approval, which order shall: (a) certify the Settlement Class; (b) preliminarily approve the settlement, and find the settlement sufficiently fair, reasonable, and adequate to allow notice to be disseminated; (c) appoint plaintiffs Andrew Russell and Ruth Gallego as Class Representatives; (d) appoint plaintiffs' counsel as Class Counsel; (e) approve the proposed selection of the Settlement Administrator; (f) approve the parties' proposed forms of notice and notice program, and direct notice to be disseminated to the Settlement Class in accordance therewith; (g) approve the parties' proposed claim form; (h) direct the United States to furnish the Settlement Administrator and Class Counsel with the information described in paragraph 6 pursuant to the Privacy Act, 5 U.S.C. §552a(b)(11); and (i) schedule a final approval hearing.

6.     Within 10 days of the Court's entry of the order described in paragraph 5, the United States will, subject to the issuance of a protective order, release to Class Counsel and the Settlement Administrator the following information: (a) the names of potential Settlement Class Members; (b) the last known postal addresses and electronic (email) addresses (if any) of potential Settlement Class Members; (c) the phone numbers of potential Settlement Class Members; (d) the employee ID numbers of potential Settlement Class Members; (5) the last known work locations for each potential Settlement Class Member; (e) the last four digits of potential Settlement Class Members' Social Security numbers; and (f) the amounts due each potential Settlement Class Member under the terms of this agreement, as calculated by defendant's expert and reviewed and confirmed by plaintiffs' expert.  Any information released

by the United States to Class Counsel or the Settlement Administrator concerning potential
Settlement Class Members and any information provided by Settlement Class Members in
support of their claims is covered by the Privacy Act, 5 U.S.C. §552, and shall be used by the
Settlement Administrator and Class Counsel solely to carry out their duties under this
executed agreement.

       7.     Within 30 days of the Court's entry of the order described in paragraph 5, the
AAFES will pay $50,000 of the Settlement Amount into the Qualified Settlement Trust
established by the Settlement Administrator to be used to offset the initial costs of the Settlement
Administrator for providing notices and other administrative costs.

       8.     In the event the Settlement Administrator receives a claim from any person whose
name is not contained in the list provided by the United States pursuant to paragraph 6 of this
agreement, and upon request of the Settlement Administrator, the United States will verify the
dates of employment, hours worked, compensation history and other information as may be
necessary to determine whether the person is a potential Settlement Class Member.  AAFES will
provide the Settlement Administrator with a point of contact for this purpose.

       9.     Within 30 days after the United States provides the Settlement Administrator the
information described in paragraph 6, the Settlement Administrator will send to the postal and
available email addresses of each potential Settlement Class Member a copy of the notice and
claim form approved by the Court, as well as a Federal employee withholding allowance
certificate, also known as Form W-4.  The date that the notice, claim form, and Form W-4 are
mailed to each potential Settlement Class Member shall be referred to as the Notice Date.  The
notice will inform the recipients that they have 120 days from the Notice Date to submit any
claims.

10.     The notice provided by the Settlement Administrator to the potential Settlement

Class Members shall include the following general notice information:  the definition of the

class; a general description of the litigation; material terms of the proposed settlement;

procedures for allocating and distributing funds from the Qualified Settlement Trust; Class

Counsel's request for and amount of attorney fees, expenses, and costs; Class Representatives'

incentive awards; options available to Settlement Class Members, including manner, time limits,

forum, and form of any objections to the proposed settlement; the right of any Settlement Class

Member to enter an appearance *pro se* or through an attorney to object to the terms of the

proposed settlement; the mailing address, toll-free telephone number, and website of the

Settlement Administrator for class inquiries and clarifications regarding the proposed settlement;

and the binding effect of the proposed settlement on Settlement Class Members.

11.     By no later than the Notice Date, the Settlement Administrator shall establish a

settlement website, supported by Google Adwords, containing a copy of the notice and claim

form approved by the Court and a Form W-4.  The settlement website shall allow for the online

filing of claims and online submission of executed Form W-4s.  Within 10 days of the

establishment of the settlement website, or as later agreed to by the parties, AAFES will publish

on its website a link to the settlement website, in a manner to be agreed upon by the parties,

which link shall remain on its website until the filing deadline for claims in this matter.

12.     By no later than the Notice Date, at all AAFES facilities AAFES shall cause to be

posted prominently and conspicuously near any time clock where employees regularly punch in

and out for their shift, a notice, no smaller than 24 inches by 24 inches, in the form of Exhibit 1

hereto.  Such notice shall remain posted for a period of 120 days after the Notice Date.  In the

event that there is no time clock where employees punch in and out, then the aforesaid notice

shall be posted in a place where employees are most likely to see it as is reasonably determined by AAFES.

13.     The Settlement Administrator will accept claims from potential Settlement Class Members on the claim form approved by the Court, will determine eligibility for payment, and will calculate and make payments to Settlement Class Members.  All claims must be accompanied by a fully-executed Form W-4.

14.     Any Settlement Class Member may express to the Court his or her views in support of, or in opposition to, the fairness, reasonableness, and adequacy of the proposed settlement.  If a Settlement Class Member objects to the settlement, such objection will be considered only if received no later than 60 days following the Notice Date.  The objection shall be filed with the Court, with copies provided to Class Counsel and defendant's counsel, and the objection must include a signed, sworn statement that: (a) identifies the case name and number (*Russell et al. v. United States*, No. 14-1062); (b) describes the basis for the objection, including all citations to legal authority and evidence supporting the objection; (c) contains the objector's name, address, and telephone number, and, if represented by counsel, the name, address, email address, and phone number of counsel; (d) indicates whether the objector has filed a claim form and opted in to the settlement; and (e) indicates whether the objector intends to appear at the fairness hearing.

15.     Upon receipt of any statements or objections meeting the requirements of paragraph 14, the Settlement Administrator shall organize the statements and objections in a reasonable manner and deliver copies to counsel for the parties.  The Settlement Administrator also shall make such statements available to the Court in the manner the Court directs.  Class

Counsel and defendant's counsel may respond to any objection within 14 days after receipt of the objection.

16.     Any Settlement Class Member who has submitted a timely objection to the proposed settlement pursuant to paragraph 14 may appear in person or through counsel at the fairness hearing and be heard to the extent allowed by the Court.  Settlement Class Members who submitted statements or objections to the Settlement Administrator need not appear at the fairness hearing.  Any Settlement Class Member who does not make and serve written objections in the manner provided in paragraph 14 shall be deemed to have waived such objections and shall forever be foreclosed from making any objections (by appeal or otherwise) to the proposed settlement.

17.     After the deadline for filing objections and the responses to objections has lapsed, the Court will hold a final approval hearing at which it will consider any timely and properly submitted objections made to the proposed settlement by Settlement Class Members, including the payment of attorney fees and expenses or incentive payments.  The Court will decide whether to approve the settlement and an award of attorney fees and expenses, incentive payments, and reasonable charges and expenses to be paid to the Settlement Administrator.  Defendant agrees that it will not object to Class Counsel's application for reasonable attorney fees and for reimbursement of expenses to be paid from the Qualified Settlement Trust, on the condition that the requested fees and expenses do not exceed 40 percent of the Settlement Amount.  Defendant also agrees that it will not object to Class Counsel's application for an incentive award of $5,000 to be paid from the Qualified Settlement Trust to each of the Representative Plaintiffs for their time and effort and for the risks incurred in serving as the Class Representatives in this litigation.

The parties shall request that the Court schedule a final approval hearing no later than 120 days from the Notice Date.

18.     If this settlement is not approved by the Court in its entirety, this settlement agreement will be void and of no force and effect whatsoever.

19.     AAFES will deposit the remainder of the Settlement Amount, $3,950,000, into the Qualified Settlement Trust within 30 days of the Court's order granting final approval of the settlement.  Within 15 days of receipt this amount, the Settlement Administrator will pay from the Qualified Settlement Trust any of its reasonable remaining fees or costs, any attorney fees and costs awarded to Class Counsel, any incentive fee awarded to the Representative Plaintiffs, and any other reasonable settlement-related costs.  As stated in paragraph 3(e), the funds remaining after these payments comprise the Net Settlement Fund.

20.     The Settlement Administrator shall calculate the amount due each Settlement Class Member who opted in to the settlement and whose claim has been approved, and then will determine, pursuant to paragraph 3(g), what amount shall be paid to each Settlement Class Member from the Net Settlement Fund.  In accordance with Federal, state and local tax laws, the Settlement Administrator shall withhold such sums from each claimant's individual settlement payment as is required to comply with all applicable legal requirements.  The Settlement Administrator shall report the taxes withheld from the wages of each claimant to the Internal Revenue Service as required by law via Form W-2, and shall timely remit such withheld funds, plus any employer's contributions for Social Security and Medicare, Federal and state unemployment taxes, and other employer-side payroll taxes, to the appropriate Federal, state, and local taxing authorities.  The Settlement Administrator shall timely provide each Settlement Class Member whose claim is approved with the appropriate documentation (e.g., a Form W-2)

setting forth the amount paid to the claimant out of the Qualified Settlement Trust, any taxes withheld, and any employer contributions that are made, in accordance with Federal, state, and local tax requirements.  Should Settlement Class Members have any disagreements or concerns regarding the calculation and withholding of taxes, the Settlement Class Members shall resolve these concerns with the Settlement Administrator.  Except as otherwise specified in this agreement, the United States will have no role or obligation in calculating, withholding, or confirming the applicable taxes for each Settlement Class Member.

21.     The Settlement Administrator will notify each claimant within the later of 60 days after the granting of final approval of the settlement or the deadline for filing claims that either: (a) the claim has been approved and the amount for which the claim has been approved; or (b) the claim has been denied and the reason for the denial.  The Settlement Administrator's decision shall be final, conclusive, and non-appealable.

22.     Upon notifying Settlement Class Members that their claims have been approved or denied, the Settlement Administrator will pay each approved claimant the amount due in the form of a check from the Qualified Settlement Trust.  The final day that settlement checks are mailed to Settlement Class Members shall be referred to as the Payment Date.

23.     If any settlement checks are returned as undeliverable, the Settlement Administrator shall make a reasonable attempt to achieve payment to any such Settlement Class Member at a valid address.  In the event the Settlement Administrator is unable to locate a valid address after making reasonable attempts, the amounts represented by such undeliverable checks shall revert to the Net Settlement Fund.  In the event a Settlement Class Member loses, destroys, or is unable to take possession of a settlement check, the Settlement Administrator will void the original check and then reissue a new check to the Settlement Class Member if such request is

made by the Settlement Class Member within 90 days of the issuance of the original check.  If

any settlement payment checks remain uncashed 90 days after issuance, such checks shall be

become void, and the amounts represented by such uncashed checks shall revert to the Net

Settlement Fund.  In the event that claimants had theretofore been paid on a *pro rata* basis

pursuant to paragraph 3(g), the amounts of such uncashed and voided checks will, if it is deemed

economically feasible by the Settlement Administrator and Class Counsel, be redistributed to the

other approved claimants on a *pro rata* basis in a supplemental distribution.  However, if

Settlement Class Members are paid 100 percent of their damages or if it is deemed impractical

and cost-prohibitive by the Settlement Administrator and Class Counsel to make a supplemental

distribution, then the amount of the uncashed and voided checks shall revert to AAFES.

24.     Within 180 days of the Payment Date, the Settlement Administrator will provide

the parties with a full and final accounting of all payments made from the Qualified Settlement

Trust.  Upon the Settlement Administrator providing the parties a full and final accounting of all

payments made from the Qualified Settlement Trust, and upon representation from the parties

that they are satisfied with the accounting, Class Counsel agrees to stipulate jointly with

defendant to the dismissal of this case with prejudice.

25.     As part of the settlement negotiations, the parties examined the methodology used

by AAFES to calculate the shift differential pay owed to employees who work or are scheduled

to work second and third shifts.  AAFES also examined and tested the payroll system used to

calculate the shift differential.  The parties believe that implementations made to AAFES's

payroll system as a result of this litigation had, by April 22, 2016, established a means of

accurately paying shift differential in accordance with the requirements of 5 U.S.C. § 5343(f), 5

C.F.R. § 532.505 *et seq*., and the various related regulations promulgated by DoD and AAFES.

These changes also resulted in the AAFES payroll system accurately calculating lump sum payments for accumulated leave upon separation, such that the parties believe that the methodology of such calculations is now in full compliance with the requirements 5 U.S.C. § 5551, 5 C.F.R. § 550 *et seq*., and the various related regulations promulgated by the DoD and AAFES.  As part of this settlement agreement, AAFES agrees to maintain these procedures hereafter and to monitor regularly its continued compliance with the requirement to pay its employees shift differential and lump sum payments in accordance with applicable laws and regulations.

26.     This settlement agreement shall constitute a full and complete release of all shift differential and lump sum claims arising out of or relating to the claims brought in this lawsuit, or that could have been brought, against the United States, or any other agencies or instrumentalities of the United States, including AAFES, or any agents, employees, or officers thereof, by Settlement Class Members.  Upon final approval of the settlement by the Court, each Settlement Class Member employed or formerly employed by AAFES releases, waives, and abandons any and all claims, causes of action, and demands arising out of or relating to the shift differential and lump sum claims brought in this lawsuit, whether known or unknown, whether arising in law or in equity, jointly or severally, which they, their heirs, executors, administrators or assignees may have or hereafter acquire against the defendant or any of its agencies, departments, officers, agents or employees, including but not limited to any claims for costs, expenses, attorney fees, and damages of any sort.

27.     This settlement agreement is for the purpose of settling this case, and for no other purpose.  Accordingly, this settlement agreement shall not bind the parties, nor shall it be cited or otherwise referred to in any proceedings, whether judicial or administrative in nature, in which

the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this agreement.

28.     This settlement agreement sets forth the entire agreement of the parties with respect to the subject matter hereof as to all Settlement Class Members.  No modification or addition to this agreement or waiver of any right herein will be effective unless it is approved in writing by counsel for the parties and by the Court.  The parties agree that each fully participated in the drafting of this settlement agreement.

29.     In the event that a party believes that the other party has failed to perform an obligation required by this settlement agreement or has violated the terms of the settlement agreement, the non-breaching party must so notify the breaching party in writing and afford it 45 days to cure the breach prior to initiating any legal action to enforce this settlement agreement or any of its provisions.

30.     The parties agree to cooperate fully with each other and the Settlement Administrator to effectuate this settlement and to resolve any matters that may arise with respect to effectuation or interpretation of the settlement that are not expressly resolved by this settlement agreement.

31.     Plaintiffs' counsel represents that they have been and are authorized to enter into the agreement on behalf of plaintiffs.

32.     This document constitutes a complete integration of the agreement between the parties and supersedes any and all prior oral or written representations, understandings or agreements among or between them.

BENJAMIN C. MIZER
Principal Deputy Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

JOHN G. JACOBS
BRYAN G. KOLTON
Jacobs Kolton Chtd.
55 West Monroe Street, Suite 2970
Chicago, Illinois 60603
(312) 427-4000
Fax: (312) 268-2425

Attorneys for Plaintiffs

Executed on November 17, 2016

MICHAEL A. RODRIGUEZ
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-4696
Fax: (202) 514-8624
Michael.A.Rodriguez@usdoj.gov

Attorneys for Defendant

BENJAMIN C. MIZER
Principal Deputy Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

JOHN G. JACOBS
BRYAN G. KOLTON
Jacobs Kolton Chtd.
55 West Monroe Street, Suite 2970
Chicago, Illinois 60603
(312) 427-4000
Fax: (312) 268-2425

MICHAEL A. RODRIGUEZ
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-4696
Fax: (202) 514-8624
Michael.A.Rodriguez@usdoj.gov

Attorneys for Plaintiffs

Executed on November 20, 2016

Attorneys for Defendant